UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| | ) | |
| CHARLES N. WATSON, JR. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 04-205-B-C |
| | ) | |
| TRANS UNION CREDIT BUREAU and | ) | |
| AT&T WIRELESS, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Charles N. Watson had filed an action against Trans Union Credit Bureau and

AT&T Wireless concerning identity-theft-like activities which involved, among other

things, AT&T Wireless's approval of a credit application submitted electronically by an

unknown party in Watson's name.   New Cingular Wireless Services, Inc., formerly

known as AT&T Wireless Services, Inc., henceforth referred to as Cingular, moves to

dismiss the complaint as against it.  (Docket No. 18.) [1]  Cingular argues that the

complaint fails to allege that Trans Union Credit Bureau, henceforth referred to as

Trans Union, or any other consumer reporting agency provided Cingular with a notice

of dispute under the Fair Credit Report Act (FCRA), a prerequisite to the relief

Watson seeks.  Cingular further argues that the state law negligence claims are

preempted by the FCRA and fail to allege breach of a cognizable legal duty.  I

recommend that the Court **DENY** the motion as to the federal claims for the reasons

---

[1]      Although Watson seemed to read the motion to dismiss as pertaining to both defendants, it is clear
that this motion is only filed on behalf of Cingular.

that follow. I recommend that the Court **GRANT** the motion to dismiss as to the state law claims as I conclude they are preempted.

### *Discussion*

### *Summary of Complaint*

With respect to the historical background for his claims, Watson explains in his amended complaint (Docket No. 11) that in November 2001 he noticed credit inquiries on his Trans Union credit report that were not attributable to him.  He promptly notified Trans Union that he was not requesting credit from any entity, indicated that he did not require credit for goods and services, and explained that he was incarcerated.  Watson realized that there were many credit inquiries noted on his report and he asked Trans Union for the address of each listed creditor.  Some of the creditors responded to Watson's follow-up and some did not.  Watson represents that he contacted Cingular in Maine and California and informed them that he did not fill out a credit application, did not require a wireless telephone, and could not use such a service as he was incarcerated.  However, Cingular went ahead and issued credit to an unknown party who continues to apply for credit in Watson's name, using his personal information all over the country.

The more specific allegations pertaining to Cingular are:

> Cingular granted an unknown party credit with the cooperation of Trans Union, providing the unknown party with a good credit rating. (This Watson explains showed negligence on the part of Trans Union for having failed to report to Cingular the consumer warning indicating that Watson was a victim of identity theft and was not and would not be requesting credit.) (Am. Compl. at 4 ¶ 4.)
> Despite the fact that Watson reported the purported fraudulent debt to Cingular's collection attorney directly and its California offices in June 2003, Cingular still continues to report the fraudulent transaction as a collection account through GC Services.  (Id. ¶ 5.)
> Cingular's negligence is equal to Trans Union because it did not conduct an investigation regarding this wireless account (or these wireless

accounts) once they had been reported (as far back as November 2001) as fraudulent. (Id. at 5 ¶ 7.)

In November 2004 Watson notified Trans Union that the account had been re-inserted into his report without notification to Watson. (Id. ¶ 8.) After Watson notified Trans Union of his dispute of the reinstatement, Trans Union did not respond within ten days required by statute, (id. ¶ 9), and Cingular did respond within the ten-day period and expressed its willingness to resolve the matter as soon as possible (id. ¶ 10).

Watson's amended complaint sets forth four "causes of action." The first is entitled: "The Plaintiff had sustained irreparable harm." This count charges Cingular (and Trans Union) with professional negligence, a reckless disregard for Watson's credit, as wells as "inadvertence, callous neglect of duties, and thoughtlessness along with flagrant remarkable failure to protect" Watson, despite his warning of identity theft. (Id. at 6 ¶ C.) He asserts that Cingular breached its professional duties to Watson and other consumers to exercise caution in screening credit inquiries. (Id. at 7 ¶¶ E,F.) He faults Cingular for ignoring his warning that he was incarcerated and was not requesting any credit (id. ¶ H) and for allowing an unknown person to incur substantial debts in Watson's name (id. at 7-8 ¶ I).

Watson's second "cause of action" is entitled: "Account Deleted by Defendant Trans Union and Allowed to be Reinstated." The allegations vis-à-vis this count seem to pertain principally to Trans Union's failure to give Watson notice as required by the Fair Credit Reporting Act that the Cingular account was being reinstated on Watson's report. (Id. ¶ 8-9.) Watson also includes a discussion of negligence in this count (id. at 9) and I interpret this count to be a state law negligence count. (Watson references the defendants' duties of notification of reinstatement under the FCRA (id.

at 8 ¶ D) but to the extent that he seeks to state a claim under the FCRA against both

defendants this would be entirely duplicative of the third count discussed below.)

Watson's third "cause of action" is entitled: "Reinstated Information in

Violation of F.C.R.A. 15 U.S.C. §§ 1681-1681u Caused the Plaintiff Irreparable

Injuries and Damages."  Here Watson alleges that the reinsertion of his Cingular

information back on to his credit bureau report as a collection account reflecting

substantial debt is the product of professional negligence on the part of Trans Union

and Cingular that is destroying Watson's credit.  (Id. at 10 ¶ A (first).)  Watson

complains that the two defendants continue to report inaccurate, fraudulent, and

erroneous information. (Id. ¶ B.)[2]

Watson's fourth, and final delineated, "cause of action" is entitled: "Injuries

Sustained by the Plaintiff."  It lists physical pain, mental anguish, embarrassment and

humiliation, and psychological injury.  (Id. ¶ A (second).)  This ground nowhere

suggests that there is a separate tort or statutory violation being pled.

Accordingly, the three counts that need to be analyzed vis-à-vis Cingular's

motion to dismiss are the first, state law professional negligence in failing to heed

Watson's initial November 2001 warnings; the second, state law negligence

concerning the reinstatement of the disputed account on Watson's report;  and the

third, an FCRA claim apropos the reinstatement.  I address this last count first as that

discussion helps set the stage for the preemption discussion apropos counts one and

two.

---

2       I do not take Watson to be raising a FCRA claim with respect to Cingular's conduct in 2001, and
it is clear in view of the facts as alleged by Watson that any such claim would be time barred.  See 15
U.S.C. § 1681p (West 1998) (current version at 15 U.S.C. § 1681p (West. Supp. 2004)).

*Fair Credit Report Act Claim*

"There are essentially three types of actors which interplay in suits under the FCRA, namely 1) consumer reporting agencies, 2) users of consumer reports, and 3) the furnishers of information to consumer reporting agencies." Vazquez-Garcia v. Trans Union De Puerto Rico, 222 F.Supp.2d 150, 153-54 (D.P.R. 2002); accord Gibbs v. SLM Corp., 336 F.Supp.2d 1, 10 -11 (D. Mass. 2004).

Watson's complaint raises concerns about Cingular's liability as a furnisher of information to consumer reporting agencies.  The statutory provision dedicated to furnisher responsibilities is 15 U.S.C. § 1681s-2(b)(1).[3]  This subsection of the FCRA provides:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-
> **(A)** conduct an investigation with respect to the disputed information;
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> **(C)** report the results of the investigation to the consumer reporting agency;
> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> > **(i)** modify that item of information;
> > **(ii)** delete that item of information; or
> > **(iii)** permanently block the reporting of that item of information.

---

[3]     There is no private cause of action under subsection (a) of §  1681i; enforcement of that provision is for state and federal officials. See id. §  1681i(a)(2); § 1681s-2(d).

 15 U.S.C. § 1681s-2(b)(1).

With respect to whether or not Watson has a private cause of action vis-à-vis

Cingular's § 1681i obligations, the FCRA provides for a cause of action against "any

person" for the willful, id. § 1681n, or negligent, id. § 1681o, noncompliance, "with any

requirement imposed under this subchapter with respect to any consumer."  While

section 1681s-2 limits section 1681n and section 1681o liability for violations of

subsection (a) of section 1681s-2, id § 1681s-2(c)(1), and subsection (e) of section

1681m, id § 1681s-2(c)(3), it expressly provides that "nothing in this paragraph shall

limit, expand, or otherwise affect liability under section 1681n or 1681o of this title, as

applicable, for violations of subsection (b) of this section," id. § 1681s-2(c)(2).

Furthermore, subsection (d) states:

> The provisions of law described in paragraphs (1) through (3) of
> subsection (c) of this section (other than with respect to the exception
> described in paragraph (2) of subsection (c) of this section) shall be
> enforced exclusively as provided under section 1681s of this title by the
> Federal agencies and officials and the State officials identified in section
> 1681s of this title.

Id. § 1681s-2(d).

 Most courts that have considered the question of whether there is even a private

right of action vis-à-vis a failure to comply with this subsection, have assumed that there

is one.  See, e.g., Nelson v. Chase Manhattan Mortgage Corp. 282 F.3d 1057, 1058 -

60 (9th Cir. 2002); Gibbs, 336 F.Supp.2d at 11; Vazquez-Garcia, 222 F.Supp.2d  at 157-

158; Aklagi v. Nationscredit Financial, 196 F.Supp.2d 1186, 1193 -94 (D. Kan. 2002);

Hasvold v. First USA Bank, N.A., 194 F.Supp.2d 1228, 1236 (D. Wyo. 2002); Brown v.

Maine Medical Center, Civ. No. 98-444-P-C, 1999 WL 33117137, 3 (D. Me. 1999).[4]

Cingular's principal line of attack on Watson's FCRA claim under section 1681s-2

is that Watson has not adequately alleged that Trans Union gave notice under

section 1681i(a)(2) as contemplated by section 1681s-2(b)(1).  This subsection provides:

**(2) Prompt notice of dispute to furnisher of information.**

> **(A) In general.**--Before the expiration of the 5-business-day
> period beginning on the date on which a consumer reporting
> agency receives notice of a dispute from any consumer or a reseller
> in accordance with paragraph (1), the agency shall provide
> notification of the dispute to any person who provided any item of
> information in dispute, at the address and in the manner established
> with the person. The notice shall include all relevant information
> regarding the dispute that the agency has received from the
> consumer or reseller.
> **(B) Provision of other information.**--The consumer reporting
> agency shall promptly provide to the person who provided the
> information in dispute all relevant information regarding the
> dispute that is received by the agency from the consumer or the
> reseller after the period referred to in subparagraph (A) and before
> the end of the period referred to in paragraph (1)(A).

15 U.S.C. § 1681i.  It is Cingular's argument that Watson must include a factual

allegation concerning Trans Union compliance with this notice requirement in his

complaint.[5]

Cingular relies on Gibbs, in pressing for dismissal of the FCRA claim on this

ground.   In that case, because the plaintiff had "not alleged that he contacted any credit

reporting agency or that the agency, in turn, got in touch with any of the defendants, the

Court concluded that "[u]nder such circumstances, a complaint brought under § [1681s-

2(b)] should be dismissed." 336 F. Supp. 2d at 12.  Seemingly putting the plaintiff in a

---

[4]     As best as I can tell, the First Circuit has yet to once cite to, let alone discuss, this provision of the
FCRA.
[5]     Cingular does not affirmatively represent that it did not receive the notice from Trans Union.

double bind,  in a footnote, the Court observed that the plaintiff was contending that facts

exist that establish communications with credit reporting agencies, "such facts are not

included in the complaint and cannot be considered in connection with the Motion to

Dismiss." Id. at 12 n.5.  See also Carney, 57 F.Supp.2d at 502 (stating that the failure to

allege that the consumer reporting agency notified the furnishers means that the plaintiff

failed to state a claim).

In Vazquez-Garcia, the plaintiff had alleged in his complaint that he had notified

the credit reporting agency (Trans Union) but had failed to specifically plead that the

credit reporting agency had complied with its section 1681s-2(b) duties to provide notice

to the furnisher of information.  See 222 F. Supp. 2d at 158.   The Court, addressing a

motion to dismiss, observed that it was unclear whether the furnisher's duties were ever

effectively triggered, id., but stated:

> However, when this information is provided to plaintiff in discovery, it
> will become clear whether plaintiff will be able to adequately prove his
> claim against Sears. At this stage, it is enough to examine the pleadings in
> the light most amenable to plaintiff, as the Court must do, and ascertain
> whether, from the pleadings, he has sufficiently plead a claim against
> Sears. In other words, it is not necessary, nor possible, for the Court to
> decide at this stage whether plaintiff will be able to establish sufficient
> proof for his claim. Perhaps at later stages the matter will be properly
> before the Court, after discovery matures.

Id. at 158-59.  And in Brown, this Court affirmed a recommended decision apropos a

complaint that alleged that the credit reporting agency contacted the credit furnishing

defendant about the disputed account; the magistrate judge observed that, although the

question was close, this allegation was sufficient to withstand dismissal, as it might be

inferred that this contact was the notice required. 1999 WL 33117137, at 3 -4.  Compare

Peasley v. Verizon Wireless (VAW) LLC, __ F. Supp. 2d __, __, +, *1 (S.D. Cal. 2005)

(concluding, as the plaintiff affirmatively alleged that the plaintiff <u>did not</u> notify a credit reporting agency but rather notified the furnisher directly, the complaint failed to state a claim for violation of § 1681s-2(b) upon which relief can be granted).  In <u>Aklagi</u>, a case relied upon by Cingular, the issue was joined at the summary judgment phase, with the court noting that plaintiffs had failed to produce admissible evidence that could make "the critical link" between the consumer reporting agency and the furnisher. 196 F.Supp.2d at 1193 & n.5.   It observed that the only admissible evidence was testimony on behalf of the furnisher that it had not received notice through the proper channel, emphasizing that the plaintiff knew of their case's deficiency during discovery and was granted an extension of the discovery deadline to allow for additional depositions.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Young v. Equifax Credit Information Servs., Inc.</u>, 294 F.3d 631, 639 -40 & n. 6 (5th Cir. 2002) (noting, in reviewing a summary judgment determination, that the plaintiff pointed to no evidence to prove that proper notice had been provided the furnisher, referring to deposition testimony).

Watson alleges only that he contacted Trans Union but that he got a response only from Cingular.   In my view, given the fact that Watson (who is  <u>pro</u> <u>se</u> and incarcerated) would not necessarily be privy to communications between the credit reporting agency and the furnisher, it is legitimate to allow Watson discovery on the question, rather than dismissing the action for want of a straw allegation.  <u>See</u> Fed. R. Civ. P. 11(b)(3).  After all, the credit reporting agency is under a statutory command to comply with the notice requirement and one could almost draw an, albeit ultimately disprovable, inference (at the

motion to dismiss phase) that the credit reporting agency was complying with the clear and rather simple mandate of the law.[6]

I add, although the concern is unaddressed by Cingular, that Watson's FCRA count targets Cingular for its responsibilities under the reinvestigation/reinsertion provision of 1681i(a)(5)(B), under the subtitle: "Treatment of inaccurate or unverifiable information." It reads:

> **(B) Requirements relating to reinsertion of previously deleted material.--**
>> **(i) Certification of accuracy of information.**--If any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency <u>unless the person who furnishes the information certifies that the information is complete and accurate.</u>
>> **(ii) Notice to consumer.**--If any information that has been deleted from a consumer's file pursuant to subparagraph (A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency.
>> **(iii) Additional information.**--As part of, or in addition to, the notice under clause (ii), a consumer reporting agency shall provide to a consumer in writing not later than 5 business days after the date of the reinsertion—
>>> **(I**) a statement that the disputed information has been reinserted;
>>> **(II)** the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any furnisher of information that contacted the consumer reporting agency, in connection with the reinsertion of such information; and
>>> **(III)** a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information.
> **(C) Procedures to prevent reappearance.**--A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than

---

[6]    Indeed, Trans Union's answer includes as an affirmative defense that "Trans Union has, at all material times with respect to Plaintiff, acted in good faith and complied fully with the FCRA and relevant state laws."  (Trans Union Answer at 8, Docket No. 19.)

information that is reinserted in accordance with subparagraph (B)(i)).

15 U.S.C. § 1681i(a)(5) (emphasis added).  Cingular has not provided any analysis of

whether or not it can be reached under section 1681i(a)(5) for its part, if any, in the

reassertion of the information in Watson's credit report.[7]

### State Law Professional Negligence Claim

Apropos its preemption argument, Cingular argues that Watson's state negligence

claims are preempted by 15 U.S.C. § 1681t(b)(1)(F) of the FCRA which provides that

"[n]o requirement or prohibition may be imposed under the laws of any State []with

respect to any subject matter regulated under ...section 1681s-2 of this title, relating to the

responsibilities of persons who furnish information to consumer reporting agencies."   15

U.S.C. § 1681t(b)(1)(F).  Subsection (F) goes on to exempt from its preemptive reach,

actions under  section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in

effect on September 30, 1996) or section 1785.25(a) of the California Civil Code (as in

effect on September 30, 1996).  However, and relied on in the alternative by Cingular, the

FCRA contains another, more senior preemption provision:

> Except as provided in sections 1681n and 1681o of this title, no
> consumer may bring any action or proceeding in the nature of defamation,
> invasion of privacy, or negligence with respect to the reporting of
> information against any consumer reporting agency, any user of
> information, or any person who furnishes information to a consumer
> reporting agency, based on information disclosed pursuant to section
> 1681g, 1681h, or 1681m of this title, or based on information disclosed by
> a user of a consumer report to or for a consumer against whom the user
> has taken adverse action, based in whole or in part on the report [,] except

---

[7]     With respect to this count it is worth noting that Watson commenced this action on November 24,
2004, and filed his amended complaint on January 24, 2005.  The amended complaint alleges that Watson
notified Trans Union on November 17, 2004, about the reinstatement dispute and that Cingular responded
within the prescribed timeframe via a written response on December 2, 2004, expressing a willingness to
resolve the matter as soon as possible. Cingular does not advance any argument that this count against
Watson is not ripe for judicial review.

as to false information furnished with malice or willful intent to injure
such consumer.

Id. § 1681h(e).

     Vazquez-Garcia explains the tension between the two provisions thusly:

> From the outset, the Court notes that the 1996 amendments have
> added a new section that creates a statutory conflict within the FCRA,
> regarding preemption of state law actions. Prior to the amendments, the
> only provision addressing the issue of preemption of state law claims, was
> section 1681h(e), which has been retained as the original provision stating
> the conditions under which furnishers of information are subject to suit
> under state law. ....
>     Accordingly, pursuant to the plain meaning of the statue, such
> claims, when based on mere negligence, were pre-empted. See, e.g.,
> Elliott v. TRW Inc., 889 F.Supp. 960 (N.D.Tex.1995)(FCRA preempted
> cause of action for defamation against credit reporting agency, where
> consumer never alleged that his damages were the result of malice
> towards, or of willful intent to injure, the consumer).
>     Nonetheless, through the Consumer Credit Reporting Reform Act
> of 1996, Congress added a new section, which clashes with the original
> preemption provisions of § 1681h(e). .... [15 U.S.C. § 1681t(b)(1)(F)] has
> created some confusion among the courts interpreting the amendments to
> the FCRA because, from its face, appears to be in direct conflict with the
> original preemption provisions of § 1681h(e).

222 F. Supp. 2d at 159-60.  Following Aklagi, the Court concluded that the provisions

could be reconciled if § 1681(h)(e) was construed to apply to the period in time from the

moment that identity theft occurs until the time when the credit reporting agency receives

a notice of dispute and § 1681(t)(b)(1)(F) was construed as  applying from the notice of

dispute onward.  Id. at 161-62. See also Aklagi, 196 F. Supp. 2d at 1194-96.

    Like the Court in Gordon v. Greenpoint Credit, I find this Aklagi- based time

period analysis "strained at best."  266 F.Supp.2d 1007, 1012 - 13 (S.D. Iowa 2003).

Responding to Aklagi, Gordon concludes that the more specific provision of § 1681h(e)

governed the preemption inquiry vis-à-vis the plaintiffs' common law defamation and

negligence claims.  Id at 103.   Carlson v. Trans Union, LLC also rejected a temporal

approach, arriving at a more satisfactory reconciliation of the two preemption provisions:

> While the approach of the Vazquez-Garcia and Aklagi courts represents an
> understandable effort to reconcile these two apparently conflicting
> subsections of the FCRA, this Court does not believe that this "temporal"
> approach represents the best solution to the problem. A simpler approach
> to reconciling the two subsections based upon the language of the sections
> themselves is this: § 1681h(e) applies only to torts, while § 1681t(b)(1)(F)
> applies only to state statutory regulation.

259 F.Supp.2d 517, 521 (N.D. Tex. 2003) (citing Richard J. Rubin, Fair Credit Reporting

Act Amendments Provide New Duties on Furnishers of Information, 1113 PLI/Corp 203,

207-8 (1999).); accord Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368, 1376 (N.D.

Ga. 2004).[8]

Since the 1996 debut of § 1681t(b)(1)(F), other courts have applied the section

1681h(e) preemption prism when analyzing common law state law claims of this ilk.  See

Young, 294 F.3d at 638 ("The FCRA preempts state law defamation or negligent

reporting claims unless the plaintiff consumer proves 'malice or willful intent to injure'

him. 15 U.S.C. § 1681h(e). Young has pointed to no evidence supporting an inference

that Penney reported information with malice or willful intent toward him.") (citations

omitted); Cushman v. Trans Union Corp., 115 F.3d 220, 229 -30 (3d Cir. 1997)

(discussing defamation claim, indicating that 15 U.S.C. § 1681h(e) was the appropriate

---

[8]     I also note that the terrain of 15 U.S.C. § 1681t has become considerably more complex since
1996.  The current version, for instance, contains an exemption provision relating to § 1681i  with the
proviso that "this subparagraph shall not apply to any State law in effect on September 30, 1996."  Id. 15
U.S.C. § 1681t(b)(E).  The subsection goes on to carve out similar limitations apropos state laws in effect at
certain cut-off dates vis-à-vis other provisions of the FCRA.  The "in general" subsection speaks of "the
laws of any State with respect to the collection, distribution, or use of any information on consumers, or for
the prevention or mitigation of identity theft."  Id. § 1681t(a). As § 1681t now stands it may make common
sense to read this exemption provision as applying to state statutory regulations that overlap with the FCRA
rather than with state common law torts which have elusive "effective" dates.  Cingular has not addressed
the implications of these recent revisions, if any, on the analysis of Watson's claims nor the question of
whether there is a retroactivity concern.

fulcrum); <u>Reed v. Experian Information Solutions, Inc.</u>, 321 F.Supp.2d 1109, 1117 n.
4 (D. Minn. 2004)  (observing that "15 U.S.C. § 1681t(b)(1)(F) generally preempts state
law pertaining to matters regulated under § 1681s-2"  but agreeing with "those courts
holding that § 1681t does not trump § 1681h(e), which allows for state claims based on
malice or willful intent to injure."); <u>Dornhecker v. Ameritech Corp.</u>, 99 F.Supp.2d 918,
931 -32 (N.D. Ill. 2000) (concluding that § 1681t(b)(1)(F) did not preempt common-law
claims of, analyzing the negligence count under § 1681h(e)); <u>see</u> <u>also</u> <u>Gibbs</u>, 336
F.Supp.2d at 12 -14 (noting holding of various courts that the specific preemption
provision of section 1681h(e) relating to negligence claims applies to one involving a
claim of common law negligence, and further discussing how, even if only
§ 1681(t)(B)(F) was deemed to apply the complaint would still fail).

Analyzing the preemption provision under section 1681h(e), the amended
complaint does not allege that Cingular furnished false information "with malice or
willful intent to injure."  Watson's complaint speaks only of run-of-the-mill negligence, a
failure to investigate, a failure to exercise caution, inadvertence, thoughtlessness, and
culpable carelessness.  The strongest language he uses is "callous neglect of duties" and
"flagrant remarkable failure to protect."  With respect to the November 2004
reinstatement activity, Watson has expressly alleged that Cingular responded to his
complaint and indicated it would follow-up.  As Watson's complaint is currently pled, I
do not take him to be attempting to allege that Cingular acted with malice within the
meaning of section 1681h(e).  Under the federal rules malice need not be pleaded with
particularity but "may be averred generally." Fed.R.Civ.P. 9(b); <u>Johnson</u>, 351 F. Supp. 2d
at 1376 (citing Federal Rule of Civil Procedure 9(b) <u>United States ex rel. Clausen v. Lab.</u>

Corp. of Am., 290 F.3d 1301, 1308 (11th Cir.2002) in analyzing § 1681h(e) malice).

However, as the master of his own complaint, it is for Watson to meet the minimal

pleading requirements, and although I must construe the complaint more leniently

because of Watson's pro se status, see Haines v. Kerner, 404 U.S. 519 (1972), [9] I cannot

pull a rabbit out of thin air and construe the complaint to allege malice or a willful intent

to injure even though Watson never once mentions these terms or any equivalent and

repeatedly emphasizes that Cingular acted with negligence. Compare Gibbs, 336

F.Supp.2d at 12 (dismissal appropriate when the plaintiff has failed to allege that the

information was furnished "with malice or willful intent to injure") with Dornhecker, 99

F.Supp.2d at 931 -32 (allegations that the plaintiffs had informed defendant that he did

not owe money, that the defendant continued its collections efforts, that the defendant

stored and distributed false information about the plaintiff with reckless disregard for its

truth or falsity, that defendant published the false information knowing that the personal

information and debt was false, that a representative of the defendant made flippant

comments about the ease of using another person's personal identity, and that the

defendant published the false information with actual malice, knowing that they were

false were sufficient to withstand a motion to dismiss ).

### *Conclusion*

For the reasons stated above, I recommend that the Court **DENY** the motion as

to the federal claims and that the Court **GRANT** the motion to dismiss as to the state

law claims.

---

[9]     Federal courts have defined the pleading parameters of the term "with malice or willful intent to
injure." See, e.g., Rhodes v. Ford Motor Credit Co., 951 F.2d 905, 906 (8th Cir. 1991); Reed, 321 F. Supp.
2d at 1117.

## NOTICE

A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions
entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by
the district court is sought, together with a supporting memorandum,
within ten (10) days of being served with a copy thereof.  A responsive
memorandum shall be filed within ten (10) days after the filing of the
objection.

Failure to file a timely objection shall constitute a waiver of the
right to *de novo* review by the district court and to appeal the district
court's order.


April 28, 2005.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge